Case is Realtime Data v. CME Group at Aisle 14-16-63. We will hear from Mr. Hawes when you are ready. Thank you, Your Honor. May it please the Court, this case concerns a 285 Attorney's Fees ruling that was an abuse of discretion for two different reasons. First of all, it was an abuse of discretion because the District Court relied and based its ruling on an erroneous view of the law. What was that? The District Court found that it only had to consider whether a refusal to stipulate non-infringement based on a Markman ruling that showed clearly that there was no infringement. Suppose I disagree with that premise. What was the legal rule on which the District Court relied to say not an exceptional case? Put aside the privilege. Okay, so I'd point you to, we have one page to look at with regard to that, Your Honor. KA-134. That's right. That's the one page we have to work with with regard to the District Court's ordinance. And what the District Court said, and this is the fourth line down on that page, the District Court said that our position was that they, after getting this Markman order, that precluded, as they said in a previous brief to this Court, precluded their infringement contention, that they should have conceded at that point. And the District Court said that they did not do so, and ultimately lost on summary judgment, does not itself amount to an unreasonable or baseless conduct. And I would tell you, Your Honor, that the itself is critical there. So that says it is not always egregious conduct to give up after claim construction. That's in fact a correct proposition, not an incorrect proposition. It depends what the claim construction order said. That is the District Court's only analysis. But that's a correct proposition of law. But it does not, that is not how the District Court used it. The defendants here said, here are all the reasons why their activities between the ruling on Markman and the ruling on summary judgment created an unusual case that met the octane fitness standard. The District Court's response to that argument is only in that sentence I just read. Yes, but read on to what the District Court then quoted from the California court. That's correct. The District Court quoted the Connecticut case from Judge Feltzer in California. And that quote specifically refers to, and this is in the fourth line of that quote, early claim construction. And then a few lines later says, these claim constructions, referring back to those early, an early claim construction. Issued separately from other act motions do not analyze issues of infringement or validity. And that's referring to this early claim construction that Judge Feltzer was referring back to. And we pointed out, both to the District Court, who did not analyze it at all, and also in our brief here, that this was the exact opposite of an early claim construction. This claim construction occurred after the source code had been handed over. After the plaintiffs have given what they said in open court were their best and final live or die by infringement contentions. And those infringement contentions were the ones that the District Court found in its Markman order were not consistent with claim construction. And then in ruling on summary judgment. Did the District Court ever conclude here that although when granting summary judgment of non-infringement, that the infringement position was not supported, not consistent with the claim construction, that the claim construction that she had adopted was so plain that it was essentially egregious or unreasonable even to think that the infringement contention could survive the claim construction? I don't think so. She didn't use those. I certainly agree with you, Judge Trotter. She did not use those words. So the only legal proposition asserted here is the rejection of the proposition that continuing to summary judgment after a claim construction does not always constitute egregious conduct. And that's correct. That's correct, and I agree with you. And the court never said that beyond the insufficiency of the infringement contention made in the three-month period after the claim construction, that that position was egregious, unreasonable, whatever the term is. The court never considered that, and that was the error of law. So where is the abuse of discretion? The abuse of discretion is when presented with a situation where there's a Markman ruling that decided the infringement issue, and there are a number of aggravating factors pointed out. The claim construction did not decide the claim construction in the relevant sense of making it clearly unreasonable to press forward. The claim construction, the language of the claim construction was, in fact, open-ended. It did not say, you may not use values in any kind of combination of what's inside the field in order to characterize the field. It did not say that. Well, Your Honor, the appellees in this situation actually said the opposite in their briefing to this court previous. If you'll turn to their brief, which is at A. Just give me a moment, Your Honor. That's a little. Okay. So I'm looking at, this is their brief to this court. Yeah. What page number? Okay. So this is looking at J.A. 282, and this is a third line down from the quotation, referring to the defendants. They invited the court, referring to the district court, to construe this term with the objective of precluding those arguments. And the arguments they're referring to are the infringement contention arguments that they had admitted were the best and final liver dialogue. And the court accepted that invitation. In their previous ruling, in their previous appeal to this court, they told this court the claim construction was wrong because it precluded the infringement arguments. They understood it precluded the infringement arguments. It was one of the bases they argued to this court as to why this court should go against the claim construction. Now this court didn't. This court agreed with the claim construction and agreed with the summary judgment of non-infringement. But further in the summary judgment ruling, the judge also said the only argument they're putting forward is one that was rejected at Markman. And I would give you one other piece. But not in effect by the language of the claim construction adopted at Markman. Well, the language in the Markman ruling. You can further construe it, which is, I think, what basically happened at summary judgment, where the district court said, I said it has to be character, and we talked before. And what you're doing with using median values or something to define the character, that's not what I meant. Well, Your Honor, first of all, I would say that in the Markman ruling, she did clarify that. She specifically said in the Markman ruling that checking for a particular value did not meet the data type claim construction. And they came along, correct me if I'm wrong, with an infringement contention that did not check for a particular value. It used a median? Is that what they used? I would disagree, Your Honor. And I think the court's findings are that the argument they made against summary judgment was the same argument that had been specifically said was outside the claim in the Markman ruling, which was, we have this value. The way we're going to determine its type is to check if it has a particular value. Sorry, we have some data. I've gotten ahead of myself. We have some data. And the way we're going to determine its type is to check if it has a particular value. That was the argument that was in front of her in their best and final infringement contentions during the Markman hearing. It's the one she said in her Markman order. What was their contention in the post-claim construction infringement? I thought that they went back and they said, oh, now I read this claim construction. And we understood from the colloquy, the discussion leading up to that, that you can't pick a particular value. We're not going to do that. We're going to use the standard deviation, the variance, the median. That is not actually the very specific thing we discussed. That actually does kind of characterize the type of field. And we're going to try that. Maybe she'll tell us. No, I actually had a broader concept in mind about what was excluded by intent, if not by language. Two things wrong. First of all, specifically with regard to that, they did not amend their infringement contentions. They didn't try to. They didn't ask for the claim construction to be reconsidered. So there wasn't a specific situation in which they said, we're going to change those best and final liver-die-back contentions. They did in response to the summary judgment motion that we filed, and in their own summary judgment motion, which they filed after losing all their claim construction arguments. They filed a summary judgment infringement. What they did was they argued using the very words of the construction that had been rejected. Their construction had been, it just needs to be a characteristic of the data. And we cited for you in our briefs how in the briefing of summary judgment, they didn't say they were doing it, but there are specific points in their analysis where they rely on the rejected construction. That is not coming up with a new infringement theory that meets the claim construction they were dealing with. That's a disguised attempt at reconsideration of the claim construction. Mr. Hawes, why do you suppose Judge Forrest refused your request for fees? With the one page I'm working with, Your Honor, I mean, it's hard for me to know for certain. She did, you know, for example, if you look at her order, and again, we've just got the one page, but on 134, she comments each time she talks about the different factors that we put forward. She doesn't go into detail, but she always says, you know, this itself does not make the case extreme. This itself, and that's true both with respect to the privilege issue, and I know you've got the other judgment. And then she added it all up, all the itself, and came to the conclusion that, no, I don't think so. Your Honor, I respectfully disagree that she added it up. Because if you look at her last line, she says, for these reasons. She doesn't say, well, then I considered it altogether to decide if the case as a whole was unusual. What do you think for these reasons means? I think it means that she reduced the case into little pieces, and for each piece said, that itself is not enough. And that's her language, not mine. She's the one who said, this piece itself is not enough to make the case extreme. As you know, we review decisions, not opinions. And she decided this issue post-octane. She used their language. And we've been told by the Supreme Court that this is a matter of discretion. And we owe deference. It seems that this is a very hard ruling to reverse. The one thing I would say, Your Honor, is if you look at Highmark, which actually is the discretionary ruling by the Supreme Court, the Supreme Court specifically said a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law. Right, but that's why I started with the question whether she stated any erroneous legal proposition. And it seems to me the only legal proposition she stated is correct. There is no erroneous legal proposition. What you can fairly say is that there wasn't an elaboration of the reasoning that went into the ultimate discretionary determination. This just isn't exceptional, not egregious. And part of that could well have been, you know, now that I look back at my initial claim construction, it didn't quite close the door to the assertion that when you take a set of values inside the field and characterize it by the set of values, that wasn't clearly foreclosed. I think ultimately it was foreclosed, but not clearly. And so it wasn't unreasonable to take one shot at that. And similarly, with respect to the privilege thing she said, this is pretty ordinary behavior. That's all. I mean, I don't know what she was thinking, what was behind all this. We just don't have it. I do think, Judge Lurie, that we are. We do need to look at the opinion because otherwise we can't meet the Supreme Court's requirement. I mean, we have to look and see if she says, hey, it can't be appealable, and she's talking about something that's early claim construction, which wasn't the situation in the case. I think you have to look at that and say, she's saying something about a rule of law. Does it apply in this case? And if it doesn't, that is basing your decision on erroneous rule of law. And that's where we are here. I know. I know. If time is not available, I wanted to save some time. We'll give you three minutes of rebuttal. Thank you, Your Honor. I appreciate that. Mr. Cooper. Do you have anything to add, Mr. Cooper? I do. Your Honor, may it please the Court. This case is not rare, exceptional, does not stand out from others in any way under octane fitness or otherwise. On appeals, he is arguing that the district court abused her discretion either by not applying the correct legal— It's a question to find that this is not such a case. We might well affirm a contrary ruling, too. But we don't have a contrary ruling. Correct, Your Honor. Abuse of discretion is one of the most deferential standards that we have to deal with. That's the point. Correct. The law and the facts here are largely undisputed by the parties, and they're clearly understood by Judge Forrest in her decision. Now, she cited octane fitness, and she's clearly recognized, in quotes, the totality of the circumstances, and she said that on JA-134. She did cite the Kanaka decision from the Central District of California, and that case is sort of similar to our case. She ultimately, though, found the case does not stand out from others. But let me talk a little bit about Judge Forrest and why she was uniquely situated to understand this case. She herself conducted the full-day markman. I'm sorry. Can you address the point that was made by Mr. Hawes, I'm sorry, about what you said in your brief on the merits appeal? I think it was JA-282. Did you say there that the claim construction, the initial claim construction, unaltered by further elaboration, precluded or even clearly precluded, maybe that's the critical difference, your infringement contention? Yes. So let me address that. And I think the answer is no, we did not take that position. And let me explain why. There's a timing issue here. At the time of the markman, and from that time until the summary judgment decision, there was an open question. And actually our expert, Dr. Shamos from Carnegie Mellon, provided us infringement information, and we pursued that position. It was ultimately rejected on summary judgment. When that appeal came up to this court, it was clear that this court affirmed how the judge had modified her or interpreted her own claim construction ruling at summary judgment. So yes, after the fact, it was clear that it was read narrowly. But at the time we received the markman, we were construing it broadly. So there's nothing inconsistent there. Judge Forrest was uniquely qualified to preside. She spent nine hours with us at a markman. She herself cross-examined our experts, both Dr. Shamos and the defendant's common expert. There were numerous hearings she presided over. She actually hand-wrote the orders. As letters came in to her, she hand-wrote on them and gave rulings essentially the same day or the next day. If you look at JA-2103, that's her order on the privilege law. She knew very well what was going on. There was no magistrate judge. There was no special master. She decided every issue. And in deciding every issue, she knew very well what was said at those conferences. They were said to her. And then if she didn't remember, CME briefed all these issues to her in the motion for sanctions under 285, 1987, and the court's inherent power. And she specifically found there was no bad faith here. And so we're rehashing the same arguments before this court. I think under the very high level of deference that we have to afford Judge Forrest here, there's simply no abuse of discretion. CME is not pleased with the decision. And I'll agree with everyone here that it's not a voluminous decision in terms of the volume of words on the page. But it is a 12- to 15-page decision. She did explain herself. And under the Carroll Touch law that's applicable here, we don't review the decision. We review the judgment. I'm happy to address any questions if you have any. Thank you, Mr. Cooper. Thank you, Your Honor. Mr. Hawes has a little rebuttal time if he needs it. Three things, Your Honor. First of all, Conecuh is not similar. We go through that in our brief. But Judge Veltzer gives you claim construction three to four months into the case. I actually like the procedure, but it's completely different than a claim construction that you get after your best and final infringement contentions, after discovery is closed, and after the infringement expert has issued a report. Those are two very different situations. Did Judge Forrest, in ruling ultimately on the judgment, say that there was something procedurally out of school about the new expert contention after the claim construction? That it was too late? Or just that it was inconsistent with, as she now understood, the claim construction that she had adopted? In that issue, she was focusing on whether summary judgment infringement was appropriate, so I think she did the latter. She said, here are their contentions. Here's the claim construction. It doesn't work. So deciding Conecuh really pointed out, since it's the one substantive thing we have in her analysis, it really points out that the legal rules she was looking at was not appropriate for this case. Secondly, when counsel characterized the statements they made in the merits appeal, and that they had a broad view of the claim construction at the Markman, but learned it was narrow at the summary judgment, I would ask the court to look at what they said. Because when they said that we invited them to preclude the infringement arguments, and the court accepted that invitation, what they cite to is the Markman ruling. This was not a perception that it was narrow at the time of the summary judgment. This was their perception that it was narrow at the time of the Markman ruling. That's right on point to them. As we say here in Washington, I feel your client's pain in this case. And I see what the set is. But you should understand from the discussion that we've had that had Judge Forrest ruled the other way, and they were up here, they'd have the same problem you do, which is overcoming a very strong deferential position. Judge Ploeger, there's a reason I said abusive discretion in my very first sentence up here, because I was well aware of that. But I'm also aware of Highmark saying if you rely on an untrue or improper, I can't remember their exact words, rule of law, that necessitates abusive discretion. That's in their opinion. Necessitates. So, you know, I think I do have a doorway to say, look, here she is going to connect. I hear she is saying, you know, this because it's from here to here, and not looking at any of the circumstances underneath. And I think we do have to look at the opinions. We can't fulfill what the Supreme Court tells us to do when there's at least a possibility of abusive discretion without looking at the opinion. Otherwise, every opinion written with just here's the case, here's fitness octane, I find no fees under 285 would be unreviewable. Thank you, Mr. Hawes. Thank you. Take the case under review. All rise.